IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DR. TRISHA DORAN, M.D.,

        Plaintiff,

                                   Case No. 2:16-cv-665

      v.                             Chief Magistrate Judge Elizabeth P. Deavers

ROBERT MCDONALD,
SECRETARY FOR THE
UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS,

        Defendant.

## OPINION AND ORDER

Plaintiff, Trisha Doran, M.D.  ("Dr. Doran"), brings this action pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 and the Americans with Disabilities Act,[1]

asserting claims of discrimination and retaliation[2] against Defendant Secretary for the United

---

[1] Although Dr. Doran brings her disability discrimination claim under the ADA, the Rehabilitation Act, 29 U.S.C. 791 et seq. is the exclusive remedy for a federal employee alleging disability-based discrimination.  *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 344–45 (6th Cir. 2020) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)).  As a parallel statute, it specifically incorporates the standards applied under the ADA to determine violations, 29 U.S.C. § 794(d), and courts look to guidance under the ADA to determine if a federal employee has been discriminated against because of a disability.  *Id.* (citing *Mahon v. Crowell*, 295 F.3d 585, 588–89 (6th Cir. 2002)).

[2] The parties stipulated to the dismissal of Dr. Doran's hostile work environment claim under Title VII and her claim brought pursuant to the Lilly Ledbetter Fair Pay Act of 2009. (ECF No. 52.)

States Department of Veterans Affairs[3] ("the VA") arising from the termination of her employment. With the consent of the parties (ECF No. 47), pursuant to 28 U.S.C. § 636(c), this matter is before the Court for consideration of Defendant's Renewed Motion for Summary Judgment (ECF No. 57), Plaintiff's Memorandum Contra (ECF No. 65), and Defendants' Reply in Support (ECF No. 69). For the following reasons, Defendant's Renewed Motion for Summary Judgment (ECF No. 65) is **GRANTED**.

## I.      BACKGROUND

The factual background of this case has been extensively documented at both the administrative and judicial levels including before the Medical Executive Board ("MEB"), Administrative Investigation Board ("AIB"), the Professional Standards Board ("PSB"), the Disability Appeals Board ("DAB"), this Court,[4] and the Sixth Circuit Court of Appeals.[5] Accordingly, the parties have stipulated to the facts set forth below.[6] Both parties also have set forth numerous additional factual allegations in their briefing. Given the sheer volume of factual information, however, the Court will address any additional factual matters only to the extent necessary for its discussion.

Beyond the following stipulated facts, the parties also agree, citing to *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 795 (1986), that any prior administrative findings are not preclusive here

---

[3] At the time the Complaint was filed, the Honorable Robert McDonald was serving as the Secretary. He was succeeded by the Honorable Robert Wilkie on July 30, 2018. (ECF No. 57, n.1.)

[4] *Doran v. McDonald*, Case No. 2:16-cv-532 (Opinion and Order issued February 9, 2018, affirming the decision of the DAB and denying Dr. Doran's motion for summary judgment. (ECF No. 39.)

[5] *Doran v. Wilkie*, Case No. 18-3327 (Opinion issued April 1, 2019, affirming this Court's grant of summary judgment to the Secretary of the U.S. Department of Veterans Affairs and the U.S. Department of Veterans Affairs.

[6] *See* ECF No. 56

and that Dr. Doran is "entitled to a trial *de novo* on her claims." Further, they agree that the administrative "decision(s) may be admitted as evidence and accorded such weight as the Court deems appropriate." *Abrams v. Johnson*, 534 F.2d 1226, 1228 (6th Cir. 1976).

## A. STIPULATED FACTS

The Department of Veterans Affairs is an executive department whose primary purpose is to assist the millions of veterans in need of federal benefits. As part of that mission, the VA, through the Veterans Health Administration, operates the United States' largest integrated healthcare system comprised of 1,233 facilities serving nearly 9 million veterans annually. The Columbus, Ohio Chalmers P. Wylie VA Ambulatory Care Center is part of the VA Central Ohio Healthcare System, which in turn is part of the VHA's Veterans Integrated Service Network ("VISN 10"), comprised of 11 medical centers as well as 63 Community Based Outpatient Clinics. VISN 10 services more than 685,000 veterans from Michigan, Ohio, Northern Kentucky and Indiana. *Id.* The Columbus VA provides care in dozens of specialties including gastroenterology. The gastroenterology department is made up of a handful of physicians, ranging from 2 to 6 at any given time.

Dr. Doran is a licensed physician, board certified in internal medicine and gastroenterology. She obtained a Bachelor's Degree in microbiology in 1994 and worked as a molecular biologist at the James Cancer Hospital in Columbus, Ohio where she conducted genetic research in immunotherapy. Dr. Doran went on to complete medical school in 2002, an internal medicine residency in 2005, and a gastroenterology fellowship in 2008, all at The Ohio State University. Dr. Doran chose to specialize in gastroenterology because "it is very complicated, so it was interesting because it was complicated. While the other specialties to me seemed kind of simple and small."

3

Before beginning her employment with the VA in 2008, Dr. Doran worked as a Critical Care Hospitalist at the Adena Medical Center.  Other than that experience during her fellowship, the VA was Dr. Doran's first job as a practicing physician.  Dr. Doran was initially hired at the Columbus VA on December 21, 2008, under a term, excepted employment under 38 U.S.C. § 7405(A)(1) and was eventually converted to a fulltime, excepted employee under 38 U.S.C. § 7401. Dr. Doran's starting salary at the VA was $196,000.00 annually.  At the outset of Dr. Dr. Doran's employment, she received a one-time payment of $20,000.00 as a recruitment incentive.

At the time that Dr. Doran began her employment with the VA, Dr. Doran's direct supervisor was Dr. Mark Cooperman.  Dr. Cooperman held that position until 2010 when he became the Columbus VA Chief of Staff.  Although Dr. Cooperman became the Columbus VA Chief of Staff, he continued to conduct Dr. Doran's proficiency reports until 2012.  Dr. Doran consistently received favorable evaluations and feedback for each year of her employment through 2013.  Dr. Doran routinely received significant performance pay bonuses.  By mid-2013, Dr. Doran's salary had increased to $265,000.00 annually.  After Dr. Doran's VA employment ended in 2015, she began working for Gastroenterology Associates of Cleveland, Inc. in Beachwood, Ohio.

On June 2, 2015, Dr. Cooperman issued Dr. Doran a notice of proposed removal and revocation of clinical privileges.  The notice described the four charges against her:

Charge 1: Failure to provide standard of care.

Specification 1 – Dr. Doran's care of Patient A during his EGD and colonoscopy on January 26, 2015.

Specification 2 – Dr. Doran's care of Patient B during his EGD on January 27, 2015.

4

Specification 3 – Dr. Doran's care of Patient C during his colonoscopy on October 17, 2014.

Charge 2: Lack of Candor.

Specification – Dr. Doran's attempts to have nurses corroborate her late addition to Patient A's Medical records in support of her version of events – despite the nurses' contradictory Recollections regarding Patient A's code blue.

Charge 3: Inappropriately documenting in a patient record

Specification - Dr. Doran's late addition (on March 16, 2015) to Patient A's medical records

Charge 4: Performing a procedure without appropriate privileges

Specification – Dr. Doran's performance of annul tattooing with methylene blue on Patient D on June 20, 2014.

The notice informed Dr. Doran she had 14 days to reply to the proposed removal orally, in writing, or both and that any such reply could include affidavits or other documentary evidence.  Dr. Doran, through counsel, responded to the notice of proposed removal in writing on July 22, 2015.  A PSB reviewed the care of Patients A, B, C, and D, as well as nursing concerns about patient safety.  The PSB found "a recurring theme of error in decision making and judgment" in Dr. Doran's care, and recommended that she undergo further evaluation to determine her fitness for duty, as well as receive mentoring, proctoring, and remedial training. Dr. Borchers testified to the PSB but did not vote.

An MEB also reviewed Dr. Doran's care and considered the PSB's recommendations. After reviewing the evidence and testimony from Dr. Doran, the MEB concluded that because alternatives to revoking Dr. Doran's privileges were not feasible for the VA, because Dr. Doran's failure to understand her role and responsibility in the patient care at issue threatened patient safety, and because the patients reviewed had poor outcomes, permanent revocation of her VA privileges was warranted.  Again, Dr. Borchers testified at the MEB but did not vote.

Dr. Borchers answered the MEB's questions regarding the PSB's recommendations, noting that Dr. Doran's demeanor and conduct had changed over the last year, and he was "concerned" by the change.  He suggested that Dr. Doran's "escalating poor decisions over the last year" could have a physical cause, such as a brain tumor. Dr. Cooperman was the chair and a voting member of the MEB.

An Administrative Investigation Board also reviewed Dr. Doran's treatment of Patient A, as well as allegations that Dr. Doran made amendments to the medical records of Patients A, B, C, and D and/or had requested staff members to make amendments. The AIB's review included 16 interviews and 30 exhibits. The AIB recommended that "appropriate corrective action be taken" regarding Patient A's care, Dr. Doran's amendment to Patient A's medical record, and her request that staff amend Patient D's medical record.  Neither Dr. Borchers or Dr. Cooperman testified before the AIB.  On August 21, 2015, the Director of the Columbus VA, Keith Sullivan, sustained the charges against Dr. Dr. Doran.  On August 21, 2015, Dr. Doran was removed from VA employment for "unacceptable performance and conduct."

## B.  PROCEDURAL STIPULATIONS

VA physicians appointed under 38 U.S.C. § 7401, such as Dr. Doran, enjoy certain procedural protections when facing major adverse employment actions.  *See* 38 U.S.C. § 7461; *see also Fligiel v. Samson,* 440 F.3d 747,750 (6th Cir. 2006). Under 38 U.S.C § 7461(c)(2), a "major adverse action" includes suspension, transfer, reduction in grade, reduction in basic pay, or discharge from employment. *Fligiel,* 440 F.3d at 750.  Because her revocation of clinical privileges and removal from VA employment involved "a question of professional conduct or competence," Dr. Doran had the right to seek administrative review of both decisions by the

Disciplinary Appeals Board.  38 U.S.C. §§ 7461(b)(1), 7462.  Under the procedures outlined in 38 U.S.C. § 7462, an employee appealing to a DAB is entitled to "[a]t least 30 days advance written notice . . . specifically stating the basis for each charge," the potential adverse actions that the agency may take, and a statement of the "law, regulation, policy, procedure, practice, or other specific instruction that has been violated with respect to each charge." 38 U.S.C. § 7462(b)(1)(A).  The employee is also entitled to a "reasonable time" to present a response to the deciding official, which may include affidavits or other documentary evidence. 38 U.S.C. § 7462(b)(1)(B).  Finally, an appealing employee may elect to be represented by an attorney or other representative at all stages of their appeal. 38 U.S.C. §7462(b)(2).

Dr. Doran elected to invoke these procedural protections after her removal from VA employment in August 2015.  On September 15, 2015, through counsel, Dr. Doran sent notice of her appeal of her termination to the VA Under Secretary of Health.  Alleging that the VA "did not support the charges by a preponderance of the evidence" and "violated her due process rights" by imposing an "unreasonable" penalty, Dr. Doran sought restoration to her position and of her privileging; reversal and expungement of all underlying administrative proceedings; rescission of any reporting to any licensing board or the National Practitioner Databank; back pay and restoration of benefits; legal fees; and "correction" of her 2014 Proficiency Report.

Accordingly, in January 2016, the VA convened a Disciplinary Appeals Board to conduct a hearing under 38 U.S.C. § 7462.  The DAB ultimately determined that Dr. Doran's treatment of Patient A "was so removed from the standard of care [that] the penalty of discharge is warranted."  The DAB also emphasized its concerns that not only did "the testimony identify judgement [sic] errors," but Dr. Doran also "demonstrated a lack of the insight needed to

guarantee confidence that her performance would be improved and be consistently safe in the future."

In determining that the penalty of removal was warranted, the DAB also considered the so-called *Douglas* factors, including the seriousness and notoriety of the offense, Dr. Doran's position, her length of service and prior disciplinary record, the erosion of supervisory confidence, consistency in penalties, any potential for Dr. Doran's rehabilitation, and any possible mitigating circumstances.  The DAB specifically noted that "[o]ther physicians at the facility have received major adverse actions for similar acts of misconduct."  Though the DAB concluded that some of the relevant factors may have weighed in Dr. Doran's favor, it found the penalty to be appropriate especially given the seriousness of Patient A's code blue, the erosion of trust and confidence between Dr. Borchers and Dr. Doran, and the need for Dr. Doran, as a licensed independent practitioner, to reflect upon her performance and role in the events under investigation.  Her consistent defense was to argue that her actions were correct and to minimize her role in the events." The DAB therefore voted 2-1 that the penalty was appropriate and upheld Dr. Doran's termination.

The Principal Deputy Under Secretary for Health executed the DAB's decision to terminate Dr. Doran's employment on May 13, 2016, after considering the evidence, the DAB's analysis, and the DAB's findings.  Executing the DAB's decision was the final agency action regarding Dr. Doran's termination.  Because Dr. Doran's termination involved identified "deviations from the standard of care," the VA was required to report the revocation of her clinical privileges to the National Practitioner Data Bank and the State Licensing Board in accordance with the Health Care Quality Improvement Act of 1986, Pub. L. No. 99-660,100 Stat. 3743 (1986). *See* 38 C.F.R. § 46.4.

The Ohio Medical Board notified Dr. Doran in February 2018 that it intended "to determine whether or not to limit, revoke, permanently revoke, suspend, refuse to grant or register or renew or reinstate your license or certificate to practice medicine and surgery, or to reprimand you or place you on probation" as a result of the VA's revocation of her privileges. The licensing investigation is ongoing.

An employee dissatisfied with the final agency action involving a major adverse employment action against them may seek judicial review of that decision. 38 U.S.C. § 7462(f)(1).  Dr. Doran filed case number 2:16-cv-532 in June 2016, seeking to set aside the DAB's findings as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Following the filing of the administrative record, both parties filed dispositive motions.  Concluding that "[t]he DAB gave Dr. Doran a meaningful opportunity to present her case," this Court affirmed the DAB's decision, noting that the DAB reached "the reasonable conclusion that discharging Dr. Doran was a warranted and prudent course of action."

Over a month after the entry of judgment in favor of the VA, Dr. Doran filed a motion for relief from judgment under Federal Rule of Civil Procedure 60.  She argued that "newly discovered evidence" in the form of a portion of Patient A's non-VA medical records established "that the Defendant's reasons for suspending Dr. Doran's privileges was [sic] not only unfounded but false" and indicated that the suspension "was done with a malicious and fraudulent intent." The VA filed a response in opposition, and Dr. Dr. Doran replied.

Dr. Doran also filed a timely notice of appeal.  Reasoning that the notice of appeal left it without jurisdiction to consider the still-pending motion for relief under Appellate Rule 4, this

Court denied the Rule 60 motion. On appeal, Dr. Doran continued to argue that the DAB's decision was not supported by substantial evidence, was arbitrary and capricious, and denied her due process.

The Sixth Circuit conducted a *de novo* review of the VA's administrative action, finding that "[w]hile a lesser sanction may also have been appropriate, we cannot say that the DAB's decision to sustain Dr. Doran's termination was arbitrary and capricious" because its decision was "not counter to the evidence before the agency, or so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Nor did the Sixth Circuit find any merit to Dr. Doran's due process claims, finding that "the essential requirements of due process . . . were met in this case." Accordingly, the Court of Appeals rejected Dr. Doran's arguments and affirmed the decision upholding the DAB's findings. The mandate issued on May 24, 2019.

Dr. Doran first initiated EEO activity by contacting the VA's Office of Resolution Management ("ORM") on July 14, 2015, approximately six weeks after receiving the proposed removal in early June 2015. She initially brought three complaints. First, she complained that proposed removal letter was discriminatory because the charges against her were unfounded, claiming that "management is not listening to her" since she was "the only female physician in [the] GI specialty." Second, Dr. Doran complained of harassment and hostile work environment on the bases of mental disability and sex. This claim was based on her suspension and administrative leave; she claimed "that the facility is forcing her to transfer." Third, Dr. Doran alleged that she was wrongfully terminated on the bases of mental disability and sex. ORM notified Director Sullivan of Dr. Doran's allegations via letter dated July 29, 2015.

Dr. Doran ultimately elected to file a formal complaint of employment discrimination. She alleged discrimination on the bases of sex, perceived disability, and reprisal dating from May 2014 to August 21, 2015.  Dr. Doran listed 55 examples of alleged discrimination.

In January 2016, ORM partially accepted Dr. Doran's complaints for investigation. ORM accepted for investigation "event 27" — Dr. Doran's removal from federal service and revocation of her clinical privileges—as a discrete occurrence of alleged discrimination.  ORM also accepted Dr. Doran's "overall harassment claim" predicated on 27 enumerated instances of alleged discriminatory harassment. ORM also accepted Dr. Doran's claim of "reprisal," although noting that "the term retaliation/reprisal will be interpreted as reprisal based [on] the complainant's allegation that management perceived her as having a disability (EEO protected basis) since a personal tragedy occurring in 2014."  Finally, ORM dismissed as untimely a newly added claim that the local VA had "mishandled and improperly denied" Dr. Doran's Education Debt Reduction Program ("EDRP") benefit in 2014.

In August 2016, the VA's Office of Employment Discrimination Complaint Adjudication issued a Final Agency Decision dismissing Dr. Doran's EEO complaint because she had filed a case in federal court[7] seeking review of the VA's administrative actions. The dismissal noted that the pending federal complaint was "based on the same management actions that are the subject of the complainant's administrative complaint of discrimination," and under 29 C.F.R. § 1614.107(a)(3), "an agency shall dismiss a complaint that is the basis of a pending civil action in the a United States District Court. . . ."  This lawsuit timely followed.

---

[7] Case No. 2:16-cv-532

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the

nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23)

## III.    ANALYSIS

### A.    Disability Discrimination and Retaliation Claims

Dr. Doran has abandoned her perceived disability discrimination and retaliation claims in favor of focusing on her gender discrimination claim. Her shift to focus exclusively on her gender discrimination claim is evident from the opening sentence of her response: "The only reason Trisha Doran's privileges were revoked is because she is a woman." (ECF No. 65, at p.1.) Her choice not to develop her argument on these claims further demonstrates that she has effectively abandoned these claims as further discussed below.

#### 1)    Disability Discrimination Claim

"To prevail on a claim for discrimination under the Rehabilitation Act, a plaintiff must show that he or she: (1) is disabled, (2) is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodation, and (3) suffered an adverse employment action solely because of his or her disability." *Mitchell v. United States Postal Serv.*, 738 F. App'x 838, 843 (6th Cir. 2018) (citing *Jones v. Potter*, 488 F.3d 396, 403 (6th Cir. 2007)). To satisfy the first element, Dr. Doran need not prove that she is actually disabled if she can show that the VA regarded her as being disabled. *Brady v. Potter*, 273 F. App'x 498, 502 (6th Cir. 2008).

The VA argues that Dr. Doran cannot prevail on this claim because there is no evidence that it regarded her as disabled, that she cannot show that others who the VA regarded as disabled were treated more favorably, or that she was terminated solely by reason of that

perception. (ECF No. 57, at pp 48-51.) Moreover, the VA contends, the record is clear that Dr. Doran was terminated solely for reasons other than any alleged disability, namely her care of Patient A that was found to be "so removed from the standard of care" that her discharge was warranted. (*Id*. at Ex. P, AR_00002310.) Dr. Doran did not respond to these arguments. The entirety of her response is limited to a discussion of case law establishing the elements of a *prima facie* case. Dr. Doran's failure to address the substance of this claim amounts to abandonment. *Tonkovich v. Gulfport Energy Corp*., No. 2:12-CV-38, 2012 WL 6728348, at *2 (S.D. Ohio Dec. 28, 2012). Accordingly, Defendant's renewed motion for summary judgment is **GRANTED** as to Dr. Doran's disability discrimination claim.

### 2. Retaliation

"A prima facie claim of Title VII retaliation requires a plaintiff to prove that '(1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Ward v. Sevier Cty. Gov't,* No. 3:18-CV-113, 2020 WL 889159, at *9 (E.D. Tenn. Feb. 24, 2020) (quoting *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019)). Unlike discrimination claims, "retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id.* at *10 (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014)).

The VA contends that Dr. Doran cannot set forth a prima facie case of retaliation. (ECF No. 57, at pp. 51-58.) Specifically, Defendant notes that Dr. Doran has not presented any evidence that her complaints relating to the nonpayment of the EDRP were presented in terms of

14

her belief that the EDRP was being withheld on the basis of her sex. Further, the VA asserts that, at the time Dr. Doran initiated EEO activity by contacting ORM on July 14, 2015, the VA already had proposed her termination over a month before on June 2, 2015. Finally, the VA argues that it was entitled to proceed with the discipline proposed prior to her protected activity such that Dr. Doran has failed to meet the but-for cause requirement.

As with her disability discrimination claim, Dr. Doran did not respond to any of the VA's arguments. The entirety of her discussion is a one paragraph restatement of the elements of a Title VII retaliation claim as set forth in *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064 (6th Cir. 1990). Dr. Doran's failure to address the substance of her retaliation claim amounts to her abandonment of this claim as well. *Tonkovich,* 2012 WL 6728348, at *2. Accordingly, Defendant's renewed motion for summary judgment is **GRANTED** as to Dr. Doran's retaliation claim.

### B. Gender Discrimination Claim

"To establish a Title VII violation, a plaintiff may rely on direct or circumstantial evidence." *Lamanna v. Dayton Police Dep't,* 788 F. App'x 1003, 1007 (6th Cir. 2019) (citing *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012)). Where a plaintiff does not base her claim on direct evidence, her circumstantial evidence is analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *Id.* (citing *Chattman*, at 346-47; *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008)). "Under that framework: (1) the plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the defendant to offer a legitimate, non-discriminatory basis for its actions; and (3) if the defendant does so, the burden returns to the plaintiff to establish that the employer's proffered reason is a pretext." *Id. (*citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576,

584 (6th Cir. 2009). As to pretext, "[a]t the summary-judgment stage, 'the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.'" *Id.* (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)).

Dr. Doran does not base her claim on direct evidence so the burden shifting framework of *McDonnel Douglas* applies here. Dr. Doran can set forth a prima facie case of gender discrimination by showing that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was "replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006). Only the fourth element is in dispute here and it appears to the Court that Dr. Doran is proceeding under both aspects.

Turning first to the issue of whether Dr. Doran was treated differently, in order to be considered similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have: (1) dealt with the same supervisor, (2) have been subject to the same standards, and (3) have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). An employee is not required to demonstrate an exact correlation between herself and others similarly situated. *Jackson v. VHS Detroit Receiving Hosp., Inc*., 814 F.3d 769, 777 (6th Cir. 2016). Rather, an employee needs to show only that she and her proposed comparators were similar in all relevant respects, and that she and her proposed comparators engaged in acts of comparable seriousness. *Id.* (citing *Mitchell*, at 583.)

16

In moving for summary judgment, the VA notes three potential comparators identified by Dr. Doran in her interrogatory responses – Dr. Mayhew, Dr. Maryala, and Dr. Borchers.  (ECF No. 57, Ex. K, at p. 3.)  The VA contends that Dr. Borchers, as Dr. Doran's supervisor, is not an acceptable comparator because he cannot be considered similarly situated.  Further, it contends that Dr. Mayhew had no sedation events and Dr. Maryala had only one.  (*Id.*, Ex. LL, at VA_00000779.)  According to the VA, there is no evidence that Dr. Maryala's sedation event, or any other GI provider's sedation event, resulted in a code blue or lasting patient harm. (*Id.*, Ex. C, Dr. Borchers Dep., at 65:13-16; Ex. A, Doran Dep., at 159:13-15; *see also* Ex. LL.)    In short, the VA contends that no other Columbus VA GI provider can be found to have engaged in conduct of comparable seriousness to Dr. Doran's conduct relating to Patient A.  Stated another way, the VA asserts that Dr. Doran was not singled out for severe discipline and, as the DAB noted, "[o]ther physicians at the facility have received adverse actions for similar acts of misconduct."  (*Id.*, Ex. P at AR_00002310.)

In her response, Dr. Doran broadly contends without specific identification that her comparators are "every physician who was part of a code blue event is a comparator regardless of status as supervisor as all of the physicians are subject to the same VA rules, same state-wide disciplinary procedures for medical licensure before the State of Ohio Medical Board and same federal statutory disciplinary procedure."  (ECF No. 65, at p. 30.)   Further, she asserts without citation to any evidentiary support, that Dr. Borchers, one of her apparent comparators, was involved in a code blue incident that resulted in patient harm for which he received no discipline. Further, again, without evidentiary support, Dr. Doran states that the record from the administrative hearing confirms that other male physicians at the VA who were involved in a code blue event that resulted in patient harm were not disciplined.

Dr. Doran's unsupported arguments on this issue cannot be credited. She has not pointed to any specific evidence that supports her assertions.[8] Dr. Doran has failed to identify comparable employees similarly situated to her in all relevant respects. *Mitchell,* 964 F.2d at 583. First, Dr. Borchers, as her supervisor, cannot be viewed as similarly situated. *See, e.g., Mann v. Navicor Grp., LLC*, 488 F. App'x 994, 999 (6th Cir. 2012) (alleged comparator and plaintiff were not similarly situated in "all of the relevant aspects" where alleged comparator was plaintiff's supervisor). Further, even if Dr. Borchers' status as her supervisor were not preclusive, Dr. Doran has failed to adduce any facts to establish that Dr. Borchers was in any way similarly situated to her. Dr. Borchers testified in his deposition that he had not been involved in a code blue event. (ECF No. 63, at p. 65.) Dr. Doran has not provided any evidence to the contrary nor any evidence of his having caused harm to a patient comparable to the harm suffered by Patient A. Beyond Dr, Borchers, Dr. Doran has not identified any other comparators. Moreover, she has failed to respond at all to Defendant's discussion as to Drs. Maryala and Mayhew, leading the Court to conclude that she concedes that she cannot demonstrate that they are valid comparators for purposes of her gender discrimination claim.

Dr. Doran also contends that she was replaced by someone outside the protected class, Dr. William H. Emlich, Jr. A person is replaced "'only when another employee is hired or reassigned to perform the plaintiff's duties.'" *Van Winkle v. HM Ins. Grp., Inc.,* 72 F. Supp. 3d 723, 733 (E.D. Ky. 2014) (quoting *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990)). Neither the record nor the parties' arguments are particularly well-developed on this issue. For her part, Dr. Doran seems to assume that Dr. Emlich was her replacement. She, however, does

---

[8] Dr. Doran's failure to rely on evidentiary support in this regard is exemplified by citations broadly to individuals' "depositions" as opposed to a pincite to a deposition transcript. *See* specifically, ECF No. 65, at p. 31, n.9-11.

not provide any evidentiary support for this assertion.   In her deposition, Dr. Doran characterizes Dr. Emlich only as having been hired after her.  (ECF 64, at p. 193.)  For its part, the VA acknowledges only that Dr. Emlich was hired in 2018 by Dr. Barry Fagan.  (ECF No. 57, at p. 44 n.28.)

To the extent that the parties address Dr. Emlich at all, it appears limited to the context of whether he could be considered a valid comparator for purposes of determining different treatment.  On this point, the VA contends that he is not a valid comparator because he was hired more than two years after Dr. Doran's termination and that his conduct at a different workplace in a different timeframe and under a different supervisor is irrelevant for purposes of Dr. Doran's sex discrimination claim.  Dr. Doran does not confirm her intention of utilizing Dr. Emlich as a comparator, but merely states that his hiring demonstrates that the VA was not concerned with patient safety despite its having cited that as the basis for her termination.

"Courts' analyses regarding the issue of replacement have not focused on the titles of the positions occupied by the employees, but rather look to whether the duties associated with the two positions are substantially similar such that it is a de facto replacement."  *King v. Ferrous Processing & Trading Co.,* No. 11-CV-10609, 2012 WL 3870517, at *6 (E.D. Mich. Aug. 16, 2012), *report and recommendation adopted*, No. 11-10609, 2012 WL 3870418 (E.D. Mich. Sept. 6, 2012) (citing *Thompson v. UHHS Richmond Heights Hosp., Inc.,* 372 Fed. Appx. 620, 624 (6th Cir.2010).  Here, as noted, neither party has provided any evidence from which the Court could meaningfully assess whether Dr. Emlich can be considered Dr. Doran's replacement. Ultimately, such a showing constitutes a part of Dr. Doran's burden of demonstrating a prima facie case.  *See id.*  Therefore, even construing these facts in the light most favorable to Dr. Doran, she has not provided anything beyond the bare allegation that Dr. Emlich qualifies as her

replacement. Thus, Dr. Doran has failed to set forth a prima facie case of gender discrimination. Accordingly, the VA is entitled to summary judgment on this claim.

The above analysis is dispositive of Dr. Doran's gender discrimination claim. However, even if Dr. Doran had stated a prima facie claim of such discrimination, that would not be enough to defeat the VA's motion for summary judgment. At that point, the burden would shift to the VA to come come forward with a legitimate business reason for terminating Dr. Doran's employment. This is a burden the VA easily meets. According to the VA, it terminated Dr. Doran out of significant and substantial patient-safety concerns, including Dr. Doran's failure to take responsibility. Specifically, the VA terminated Dr. Doran as a result of her care of Patient A that resulted in a code blue event followed by the $300,000 settlement of an administrative tort claim. (ECF No. 57, Ex. Y at VA_00003434; Ex. Z at VA_00003440.) Such concerns are undoubtedly a legitimate business reason to terminate a healthcare provider. *See, e.g., Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 400 (6th Cir. 2014) (legitimate business reason existed where plaintiff patient transporter violated clinic policy by taking actions detrimental to patient safety when she left unattended a deceased patient); *Qixin Sun v. Dep't of Veterans Affairs*, No. 2:17-CV-1039, 2019 WL 6682158, at *11 (S.D. Ohio Dec. 6, 2019) (incompetence and misconduct were legitimate, nondiscriminatory reasons to discipline physician); *Fletcher v. U.S. Renal Care, Inc.*, 240 F. Supp. 3d 740, 753 (S.D. Ohio), *aff'd sub nom. Fletcher v. U.S. Renal Care*, 709 F. App'x 347 (6th Cir. 2017) (patient charting errors raising patient safety concerns was a legitimate reason for the issuance of the disciplinary counseling); *Lisan v. Wilkie*, No. 1:18CV969, 2020 WL 109066, at *16 (N.D. Ohio Jan. 9, 2020), *motion for relief from judgment denied sub nom. Ronald Lisan, M.D. v. Wilkie,* No. 1:18CV969, 2020 WL 2126679

20

(N.D. Ohio May 5, 2020) (disruptive behavior putting patient safety at risk was legitimate business reason for ten-day suspension of anesthesiologist).

Dr. Doran summarily dismisses the VA's legitimate business concern, characterizing Patient A's harm and the settlement payment as "flimsy arguments." (ECF No. 65, at p. 40.) Given the VA's legitimate business reason, it would then be Dr. Doran's burden to prove that this purported patient safety concern was pretextual. This she cannot do. A plaintiff can demonstrate pretext by showing that the defendant's proffered reason "'(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002).

Dr. Doran argues that the VA's proffered reason has no basis in fact.[9] She attempts to raise a genuine issue of material fact as to this matter by setting forth nearly twenty pages of "disputed material facts." These "facts" appear to be an nothing more than a repackaging of previous arguments and contain only minimal citation to evidentiary support. For example, she reiterates her belief that Patient A did not experience an over-sedation; continues to assert that she provided proper care to Patient B and that others overreacted; and complains about the truthfulness of certain nurse's reports. Primarily, however, she details Dr. Borchers' alleged "vendetta" against her and his actions to insure a "predetermined outcome" of getting her fired. (ECF No. 65, at pp. 8-27.)

---

[9]It does not appear that Dr. Doran is invoking the second prong of the pretext analysis. Under that prong, a "'plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal.'" *Russell v. Univ. of Toledo*, 537 F.3d 596, 606 (6th Cir. 2008) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

To be sure, Dr. Doran continues to adamantly contest the facts underlying her termination.   And it is her privilege to do so.   But her steadfast disagreement does not create a genuine issue of material fact sufficient to defeat summary judgment.   The issue here is not whether Dr. Doran made a medical error.   The issue is whether the Columbus VA reasonably and honestly believed that she did.

Under the honest belief rule, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen*, 580 F.3d at 401 (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir. 2007)). "An employer holds an 'honest belief if it 'made a reasonably informed and considered decision' before acting." *Qixin Sun v. Dep't of Veterans Affairs,* No. 2:17-CV-1039, 2019 WL 6682158, at *11 (S.D. Ohio Dec. 6, 2019) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998)). "The decisional process need not have been 'optimal,' nor must the employer have 'left no stone unturned.'" *Id.* (quoting *Smith* at 807).   An employee can overcome the "honest belief rule" by pointing to evidence that "the employer failed to make a reasonably informed and considered decision before taking its adverse employment action." *Id.* (quoting *Smith*, 155 F.3d at 807–808); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286 (6th Cir. 2012) (an employee must be permitted to present evidence to the contrary).   However, "an employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question and fails to create a genuine dispute of fact." *Babb v. Maryville Anesthesiologists P.C.,* 942 F.3d 308, 322–23 (6th Cir. 2019) (citing *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012)).

There is no question that Dr. Doran's care of Patient A was subject to a thorough investigative and decisional process and multiple levels of review. Significantly, Dr. Doran was found to pose a risk to patient safety by her immediate supervisor, the Columbus VA Chief of Staff, the Columbus VA Director, the MEB, the AIB, the PSB, the DAB, this Court and the Sixth Circuit Court of Appeals. (ECF No. 56, at ¶¶ 21, 25-28, 33, 35, 39, and 43.) The VA contends that these administrative findings are entitled to great weight under *Abrams,* 534 F.2d 1226, because these numerous levels of review present more than an adequate record and afforded Dr. Doran a "more than sufficient" degree of procedural fairness. Dr. Doran does not argue otherwise.[10] The Court agrees that, under these circumstances, these administrative decisions are deserving of great weight. The significant and multiple levels of review, as affirmed by both this Court and the Sixth Circuit, insulate the VA's termination of Dr. Doran from her allegations of pretext. *Qixin Sun,* 2019 WL 6682158, at *12.

Dr. Doran attempts to raise an issue of fact as to whether the VA made a reasonably informed decision before terminating her by demonstrating that she met the standard of care relevant to medical malpractice actions in Ohio.[11] Whether she met that particular standard of care, however, is of no consequence. The VA is free to hold its employees to a higher standard

---

[10] Dr. Doran's Response contains a section heading stating "The Administrative Record is Rife with Contradictions and Cannot be given any weight." (ECF No. 65, at p. 42.) It is not followed by any argument.

[11] Dr. Doran has submitted what she characterizes as "overwhelming expert support for [her] care in this case." (ECF No. 65, at p. 41.) The Court declines to consider these "expert reviews." (ECF No. 68.) First, they were filed nearly one month late and without leave of court. Also, according to the VA, Dr. Doran failed to comply with the requirements of Federal Rule of Civil Procedure 26(a). Moreover, even if the Court were to consider any of these "reviews," contrary to Dr. Doran's position, they are readily distinguishable from the expert testimony at issue in *Babb*, 942 F.3d at 323. That is, they challenge the facts underlying the VA's decision in this case and do not address the "likelihood that a *reasonable* [practitioner] would have *actually relied on those facts* to fire an" employee. *Id.* (emphasis in original).

than the threshold for medical malpractice liability under Ohio law. *See Babb,* 942 F.3d at 317 n.6 ("Of course, [the employer's] standard of care for its nurses may be higher than the general standard of care set by state tort law" and "an employer gets to set its own standard for employees to follow"); *Benjamin v. Brachman*, 246 F. A'ppx 905, 912, 916 (2007) (recognizing that plaintiff was aware that standard of care at academic hospital was higher than the standard used to evaluate negligence in medical malpractice cases.) Consequently, as the VA points out, the issue here is whether it "held Dr. Doran to its own standards and in doing so relied on the types of facts and inferences that a medical provider would reasonably consider indicative of a breach of that standard." (ECF No. 69, at p. 14.) Dr. Doran has not addressed this issue in any meaningful way.

Finally, Dr. Doran appears to contend that the VA's proffered reason is insufficient to explain the adverse action. "A showing of insufficiency may overlap with the 'similarly situated' prong of the *prima facie* case; pretext may be established by 'evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.'" *Fields v. Health*, No. 3:16-cv-100-DJH-CHL, 2017 WL 3910226, at *5 (W.D. Ky. Sept. 6, 2017) (quoting *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 676 (6th Cir. 2008)). As with her prima facie case, Dr. Doran relies on Drs. Borchers and Emlich as her comparators. For the same reasons Dr. Doran's reliance on these comparators failed to raise a genuine issue of material fact at the prima facie stage, they fail to do so at the pretext stage as well.

Thus, the VA is entitled to summary judgment on Dr. Doran's gender discrimination claim for the additional reason that she has failed to demonstrate pretext.  Accordingly, Defendant's renewed motion for summary judgment is **GRANTED** as to this claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment (ECF No. 57) is **GRANTED.**  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor the of Defendant.

**IT IS SO ORDERED.**


Date: May 29, 2020                              */s/ Elizabeth A. Preston Deavers*
                                        ELIZABETH A. PRESTON DEAVERS
                                        CHIEF UNITED STATES MAGISTRATE JUDGE